# FILED

JAN 2 4 2013

**THOMAS G. BRUTON**
**CLERK, U.S. DISTRICT COURT**

## BEFORE THE UNITED STATES
## JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| **IN RE: DOMESTIC DRYWALL ANTITRUST LITIGATION** | MDL NO. _____ |

## MEMORANDUM OF LAW IN SUPPORT OF AMENDED MOTION FOR TRANSFER TO WESTERN DISTRICT OF NORTH CAROLINA

## TABLE OF CONTENTS

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ................................................ 1

II.    STATEMENT OF FACTS ............................................................................ 1

III.   PROCEDURAL POSTURE .......................................................................... 3

IV.  CENTRALIZATION OF THE DOMESTIC DRYWALL ANTITRUST ACTIONS IS
APPROPRIATE ............................................................................................ 4

     A.    The Related Actions Involve Multiple Common Questions of Fact and Law ........ 4

     B.    Consolidation in a Single Judicial District Will Serve the Convenience of the
Parties and Witnesses and Promote the Just and Efficient Conduct of the Related
Actions ............................................................................................... 5

V.   THE WESTERN DISTRICT OF NORTH CAROLINA WOULD BE THE MOST
APPROPRIATE TRANSFEREE DISTRICT ................................................... 6

     A.    The center of gravity of the Domestic Drywall Antitrust actions is in the
southeastern United States ...................................................................... 6

     B.    None of the Related Actions is procedurally advanced ......................................... 7

     C.    Docket Conditions Favor the Western District of North Carolina ........................ 7

     D.    Charlotte is an accessible metropolitan venue ....................................... 8

     E.    Senior Judge Mullen is Well-Suited to Preside Over the Domestic Drywall
Antitrust Actions ................................................................................ 8

VI.  CONCLUSION ............................................................................................ 9

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

The *Domestic Drywall Antitrust* actions should be centralized in the Western District of North Carolina, Charlotte Division, before the Honorable Graham C. Mullen. The seven cases all allege a price fixing conspiracy in violation of federal antitrust law. All plaintiffs seek treble damages on behalf of themselves and a nationwide class of those similarly situated. This is the sort of case that this Panel routinely has consolidated.

The Western District of North Carolina, Charlotte Division, would be the most appropriate Transferee District in which to centralize the Domestic Drywall Antitrust. Charlotte is a conveniently located metropolitan location with the capacity to handle this litigation, which has a decidedly southeastern bent; it is a convenient metropolitan location with a favorable docket. The Honorable Graham C. Mullen, formerly Chief Judge of the Western District, who was assigned the first-filed Western District of North Carolina case, is an accomplished jurist with the skill and experience to which the Panel may confidently entrust steering the *Domestic Drywall Antitrust* actions in a just and efficient manner.

## II. STATEMENT OF FACTS

Plaintiff alleges that Defendants have engaged in a conspiracy to fix prices for the sale of drywall in the United States. Defendants manufacture and sell nearly 100% of the drywall (also known as wallboard, gypsum board and sheetrock) in the United States for residential and commercial construction.

Drywall is the fundamental building component for walls and ceilings of houses, condominiums, apartments, and office and other commercial buildings. Drywall is used in repair, remodeling and improvement, as well as in new construction. It is used in over 90

percent of all new residential and commercial construction projects in the United States. Drywall accounts for 4-5% of the cost of a new home.

Defendants implemented their conspiracy largely through coordinated price increase announcements and other coordinated price policies and output restrictions. On multiple occasions, each of the drywall manufacturers made price increase announcements at the same time; using the same language; for the same amounts; to become effective on or about the same date. This was the result of a conspiracy. Defendants agreed to fix and maintain artificially high prices and actually did succeed in doing so, earning artificially high revenues at the expense of Plaintiff and the Class – all, or nearly all, of which have suffered overcharge damages.

In addition to price-fixing, and in an abrupt change in the longstanding industry practice, each of the Defendants simultaneously abolished the pricing practice known as "job pricing," which had been an integral part of the drywall business, historically. Defendants also agreed to reduce production to further add to the success of the conspiracy.

The nature of the drywall product and the characteristics of the drywall industry enabled Defendants to succeed in fixing prices. Drywall has no reasonably functional substitutes, thus enabling manufacturers of drywall to control the market without fear that purchasers might turn to an alternate product. Moreover, because of the safety and quality concerns associated with imported drywall, particularly Chinese drywall, there are no reasonable substitutes for domestically produced drywall. Because Defendants make and sell nearly 100% of domestic drywall, there are no alternatives but to buy drywall from Defendants – no matter how anticompetitive the price. Plaintiff and the Class suffered antitrust injury in the form of overcharge damages.

2

III.    **PROCEDURAL POSTURE**

All seven of the *Domestic Drywall Antitrust* actions are recently filed and in a very early stage.    There are two transferee courts in which Related Actions are pending: the Western District of North Carolina and the Eastern District of Pennsylvania.

On December 13, 2012, Sierra Drywall Systems, Inc. filed the first complaint in the Northern District of Illinois alleging a one count conspiracy claim against some, but not all, of the defendants in the Related Actions, on behalf of a plaintiff class of direct purchasers of drywall from January 1, 2012, forward.    The case was assigned to the Honorable Samuel Der-Yeghiayan.

On December 20, 2013, Janicki Drywall, Inc. filed a similar case in the Eastern District of Pennsylvania.    The case was assigned to the Honorable Michael M. Baylson.    On December 21, New Deal Lumber & Millwork, Inc. filed a case in the Eastern District of Pennsylvania.    The case also was assigned to the Honorable Michael M. Baylson.

On December 28, 2012, Sierra Drywall voluntarily dismissed its action pending before Judge Der-Yeghiayan in Chicago.    On January 2, 2013, Sierra Drywall then re-filed the same case in the Eastern District of Pennsylvania.    The case was assigned to the Honorable Michael M. Baylson.

On January 16, 2013 Grubb Lumber Company, Inc. filed a case in the Eastern District of Pennsylvania with some of the same counsel as New Deal Lumber.    The case was assigned to the Honorable Michael M. Baylson.

Other than the dismissed Sierra Drywall action, no cases have been filed in the Northern District of Illinois.

On January 17, 2013, Movant filed *Caceres Drywall Corporation v. National Gypsum Company a/k/a New NGC Co., et al.* (3:13-cv-00031) in the Western District of North Carolina. The case has been assigned to the Honorable Graham C. Mullen.

On January 18, 2013, a second Related Action was filed in the *Western District of North Carolina, Jerry R. Berkhous d/b/a Berkhous Drywall & Construction v. National Gypsum Company a/k/a New NGC, Inc., et al.* (3:13-cv-00035). The case has been assigned to the Honorable Robert J. Conrad, Jr.

No case has yet had any significant briefing or discovery, and none is meaningfully more advanced beyond another. No case management conference or other court hearing has yet been held in any of the cases at this point.[1] Because all of the *Domestic Drywall Antitrust* actions challenge the similar conduct, raise similar claims and seek similar relief, they are ripe for multidistrict assignment to a single federal court – the Western District of North Carolina.

## IV. CENTRALIZATION OF THE DOMESTIC DRYWALL ANTITRUST ACTIONS IS APPROPRIATE

The Panel should transfer and consolidate these cases in a single district because: (1) the actions involve numerous common questions of fact and law; and (2) consolidation will convenience the parties and witnesses, and will promote the just and efficient conduct of this litigation.

### A. The Related Actions Involve Multiple Common Questions of Fact and Law

When multiple actions pending in different districts contain one or more common questions of fact or law, such actions may be coordinated or consolidated in one district for pretrial proceedings. The seven Related Actions involve one or more common questions of fact, including:

---

[1] On January 9, 2013, an initial case management conference was set for February 4, 2013 in Cases 12-cv-07106 and 12-cv-0761. Movant is unaware whether that conference will be continued in light of these J.P.M.L proceedings.

4

Whether Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, peg, maintain or stabilize prices for the sale of domestically manufactured drywall in the United States;

The identity of the participants of the alleged conspiracy;

The acts carried out by Defendants and their co-conspirators in furtherance of the alleged conspiracy;

Whether the alleged conspiracy violated the Sherman Act;

Whether the conduct of Defendants and their co-conspirators caused injury to the business or property of Plaintiffs and the members of the Class in the Related Actions;

The effect of the alleged conspiracy on the prices of drywall sold in the United States during the alleged class period;

Whether Defendants and their co-conspirators fraudulently concealed the conspiracy's existence; and

The appropriate measure of damages sustained by the Plaintiffs and other members of the class in the Related Actions.

These common issues provide the Panel with the authority to transfer these actions to a single judicial district for consolidated or coordinated pretrial proceedings.[2]

**B.     Consolidation in a Single Judicial District Will Serve the Convenience of the Parties and Witnesses and Promote the Just and Efficient Conduct of the Related Actions**

Centralization under 28 U.S.C. § 1407 is proper when it will "serve the convenience of the parties and witnesses and promote the just and efficient conduct of [the] litigation."[3] Centralization is appropriate where, as here, it will "eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save time and effort of the parties, the attorneys, the witnesses, and the courts."[4] Indeed, "[a]ntitrust actions present a category of actions that the Panel almost inevitably orders transferred if there are multiple actions pending in

---

[2] *See, e.g., In re Cement & Concrete Antitrust Litig.*, 437 F. Supp. 750 (J.P.M.L. 1977) (ordering transfer and consolidation of cases upon a finding of common questions of fact concerning the existence and scope of an antitrust conspiracy).
[3] *In re Hydrogen Peroxide Antitrust Litig.*, 374 F. Supp. 2d 1345, 1346 (J.P.M.L. 2005).
[4] MANUAL FOR COMPLEX LITIGATION, Fourth, § 20.131 (2010).

different districts."[5]    Moreover, the "Panel has regularly ordered transfer of class actions involving potentially overlapping or conflicting class definitions."[6]

Like so many prior antitrust class actions this Panel has centralized, the *Domestic Drywall Antitrust* actions "present overlapping and, in many instances, nearly identical factual allegations that will likely require duplicative discovery and motion practice."[7]    Centralization "will eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification; and conserve the resources of the parties, their counsel and the judiciary."[8]

## V.    THE WESTERN DISTRICT OF NORTH CAROLINA WOULD BE THE MOST APPROPRIATE TRANSFEREE DISTRICT

### A.    The center of gravity of the Domestic Drywall Antitrust actions is in the southeastern United States

The location of the parties and witnesses in Charlotte, the Southeast, and in the Fourth Circuit, favors centralization in the Western District of North Carolina, Charlotte Division. National Gypsum and its affiliates are headquartered in Charlotte, North Carolina.    Witnesses and documents, therefore, are overwhelmingly located in that district.[9]    In addition to North Carolina, other domestic defendants are headquartered in the southeast: Virginia, Texas, and Georgia.    That the majority of the parties are located nearby also favors the Western District of North Carolina.[10]    Like National Gypsum and Lafarge, a key third-party, the Gypsum

---

[5] MULTIDISTRICT LITIGATION MANUAL, § 5:14.

[6] *Id.*

[7] *In re BP Prods. N. Am., Inc., Antitrust Litig. (No. II)*, 560 F. Supp. 2d 1377, 1379 (J.P.M.L. 2008).

[8] *In re Set-Top Cable TV Box Antitrust Litig.*, MDL No. 1995, 2008 U.S. Dist. LEXIS 100789, at *2 (J.P.M.L. Dec. 12, 2008). *See also In re Toshiba America HD DVD Marketing and Sales Practices Litig.*, 572 F. Supp. 2d 1376, 1377 (J.P.M.L. 2008); *In re Methyl Methacrylate (MMA) Antitrust Litig.*, 435 F. Supp. 2d 1345, 1347 (J.P.M.L. 2006); *In re Hypodermic Prods. Antitrust Litig.*, 408 F. Supp. 2d 1356, 1357 (J.P.M.L. 2005); *In re Foundry Resins Antitrust Litig.*, 342 F. Supp. 2d 1346, 1347 (J.P.M.L. 2004).

[9] *See, e.g., In re Digital Music Antitrust Litig.*, 444 F. Supp. 2d 1351, 1352 (J.P.M.L. 2006) (centralizing in district where "most defendants are headquartered").

[10] *See, e.g., In re Propecia (Finasteride) Prods. Liab. Litig.*, 856 F. Supp. 2d 1334, 1335 (J.P.M.L. 2012) ("[b]ecause Merck is headquartered in nearby Whitehouse Station, New Jersey, the Eastern District of New York is close to where relevant evidence and witnesses are likely located").

Association is headquartered in the Fourth Circuit: in Hyattsville, Maryland. This also favors centralization.[11]

### B. None of the Related Actions is procedurally advanced

All of the *Domestic Drywall Antitrust* actions are recently filed and in a very early stage. There are two transferee courts presently at issue – the Western District of North Carolina and the Eastern District of Pennsylvania. The first-filed case, *Sierra Drywall* in Chicago has been voluntarily dismissed by Plaintiff. No case has yet had any briefing or discovery, and none is more advanced in any meaningful way beyond another. No case management conference or other court hearing has yet been held in any of the cases at this point.[12]

### C. Docket Conditions Favor the Western District of North Carolina

The Western District of North Carolina has favorable docket conditions according to federal statistics,[13] particularly as compared to the Eastern District of Pennsylvania, the only other District in which *Domestic Drywall Antitrust* actions are pending.[14] As of the time of publication, the Eastern District of Pennsylvania had the most civil filings per judgeship in the nation – 2,169. By contrast, the Western District of North Carolina had just 238. Similarly, while the Eastern District of Pennsylvania had 916 pending cases per judgeship, the Western District of North Carolina had just 329. Furthermore, while the Western District of North

---

[11] *Accord In re Tropicana Orange Juice Mktg. & Sales Practices Litig.*, 2012 U.S. Dist. LEXIS 82952 (J.P.M.L. June 11, 2012) ("The district is also the location of several third-party flavoring companies that may be relevant to this litigation.").

[12] On January 9, 2013, an initial case management conference was set for February 4, 2013 in Cases 12-cv-07106 and 12-cv-0761. Movant is unaware whether that conference will be continued in light of these J.P.M.L proceedings.

[13] *See* United States Courts, Federal Court Management Statistics, *at*

http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/DistrictCourtsDec2011.aspx

[14] Sierra Drywall voluntarily dismissed this case in the Northern District of Illinois. No other cases have been filed in the Northern District of Illinois. In any event, the Northern District of Illinois has a crowded docket: there are (i) 444 civil cases filed per judgeship; (ii) 488 pending civil cases pending per judgeship; and (iii) 1,215 civil cases more than three years old. With no Drywall Antitrust cases, its crowded docket, and location outside the southeast U.S., Chicago would not be a better transferee district than would be the Western District of North Carolina.

7

Carolina had only 47 civil cases more than three years old (4.3%), the Eastern District of Pennsylvania had 5,690 – 29.8%.

### D.      Charlotte is an accessible metropolitan venue

Charlotte, North Carolina is an easily accessed metropolitan venue.[15] It is serviced by an international airport: Charlotte Douglas International Airport. Charlotte is the nation's sixth largest urban region. Of the major metro centers in the Southeast, Charlotte is the second-most populous, with 7.3 million people living within a 100-mile radius.

Charlotte serves as headquarters for many major national and international companies. Around 274 of the Fortune 500 companies have facilities in Charlotte, eight of which are headquartered in Charlotte, ranking Charlotte sixth nationally in the number of headquartered firms. With more than $2.3 trillion in assets, it is the second largest financial center in the nation, behind only New York. Over 888 foreign-owned companies have Charlotte area facilities, representing over half of all foreign companies in North Carolina, which suggests not only that Charlotte is cosmopolitan, but also that it is accessible nationally and internationally.

### E.      Senior Judge Mullen is Well-Suited to Preside Over the Domestic Drywall Antitrust Actions

Senior Judge Mullen, to whom the first-filed Western District of North Carolina case has been assigned, is an accomplished jurist to whom the Panel may confidently entrust steering the Domestic Drywall Antitrust actions in a just and efficient manner, as he has in other multidistrict litigations that the Panel has transferred to his Court.

---

[15] *See generally* Charlotte Chamber of Commerce, *at* http://asoft8167.accrisoft.com/charlottecoc/eco-dev/charlotte-overview/

8

## VI. CONCLUSION

For the forgoing reasons, Plaintiff respectfully requests that the Panel centralize the actions set forth in the Schedule of Actions filed herewith, as well as any tag along actions or other cases such as may be subsequently filed asserting related or similar claims in the United Stated District Court for the Western District of North Carolina, Charlotte Division, before the Honorable Graham C. Mullen.

Dated: January 18, 2013                    Respectfully submitted.

   /s/    Linda P. Nussbaum     
Linda P. Nussbaum
Peter A. Barile III
GRANT & EISENHOFER P.A.
485 Lexington Avenue
New York, New York 10017
Tel.:    (646) 722-8500
Fax:    (646) 722-8501
Email: lnussbaum@gelaw.com
          pbarile@gelaw.com

*Counsel for Movant and the Proposed Class*

9